Argued March 12, decided March 19, 1912.

# HIGGINS v. SEAMAN.

[122 Pac. 40.]

JUDGMENT—DEFAULT—VACATING—GROUNDS—MISTAKE.

1. On August 2d defendants' counsel wrote plaintiffs' counsel, requesting him to draw a stipulation for a change of venue, which plaintiffs' counsel favored, and put the hearing as late as possible at the September term. Before further arrangements were made, defendants' counsel was called away by impending family illness without the knowledge of plaintiffs' counsel, but on August 6th the latter wrote to defendants' counsel, stating that plaintiffs insisted on having the case tried in the county of the venue, and that the writer would be there on the 23d of August to take up the case, but defendants' counsel did not receive the letter until August 14th, and on the 17th telegraphed plaintiffs' counsel, then en route to court, that he had relied upon the prior arrangement to try the case in a different county, but plaintiffs' counsel replied that he expected to try the case the following week, and a decree was rendered for plaintiffs in absence of defendants or counsel. The moving affidavits showed that defendants, relying upon the correspondence between counsel, had gone on their vacation so as to be out of touch with their attorneys at the time of trial. *Held,* that defendants were entitled to have the decree set aside under Section 103, L. O. L., authorizing the trial court to release a party from a judgment taken against him through mistake, inadvertence, or excusable neglect; the failure of defendants' counsel to attend trial not being through defendants' fault.

JUDGMENT—DEFAULT—VACATING—CONDITIONS.

2. As a condition to setting aside the decree and granting a rehearing, defendants should pay the costs and disbursements incurred by plaintiffs in the trial court up to the time the decree is vacated.

From Curry: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by L. G. Higgins and J. E. Higgins, by L. G. Higgins, his Guardian, and L. L. Higgins, by his Guardian, L. C. Higgins against Norman G. Seaman and N. W. Rountree regarding the sale of certain mining claims.

The plaintiffs entered into a contract with the defendants for the sale to the latter of certain mining claims for an agreed price of $30,000, stipulating that the purchasers should have possession of the mines and work them until they could thereby raise the money to

pay the purchase price. On May 19, 1909, the plaintiffs instituted this suit to cancel the contract and remove the cloud thereof from plaintiffs' title to the real property in question on the alleged grounds that the defendants had not only violated the contract, but had also abandoned the same.

On July 29, 1909, the defendants filed their answer, denying a breach of the contract on their part, charging an infraction of it on the part of the plaintiffs, and claiming damages in the sum of $5,000.

A reply traversing most of the new matter in the answer was filed August 9, 1909. On August 24th of that year the cause was called for trial in the circuit court of Curry County, in the absence of defendants and their counsel, and resulted in a decree according to the prayer of the complaint. The present contention arises upon the refusal of the circuit court, on motion of the defendants, to set aside the decree, and allow them to be heard upon the merits as upon a new trial of the cause. The defendants appeal. Other facts are stated in the opinion.          CONDITIONALLY REVERSED.

For appellants there was a brief over the names of *Messrs. John F. Logan, Isham N. Smith* and *Sam M. Johnson,* with an oral argument by *Mr. Logan.*

For respondents there was a brief and an oral argument by *Mr. Robert G. Smith.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The record shows that at the time of filing the answer the defendants' counsel opened negotiations by correspondence with the attorney for the plaintiffs looking to a trial of the cause either before a referee who would take the testimony at some point more convenient than the distant county of Curry or a change of venue. The overtures were accepted favorably by the plaintiffs' counsel, and the correspondence resulted in this letter

from defendants' counsel to plaintiffs' attorney, under
date of August 2, 1909:

"Your letter of July 31st is acknowledged. Myself and
my client will be willing to have the case tried at Grants
Pass. You may draw the stipulation for a change of
venue to that effect. Inasmuch as we have a term begin-
ning in September, might I ask that you put the hearing
of this case as late as possible in your September term
of court. Let me know as near as you can judge approxi-
mately when it can be heard so that I can arrange my
affairs to be present. I remain, Very truly yours,
                                        John F. Logan."

While this "gentleman's agreement" was in this uncom-
pleted state, awaiting the drawing and execution of the
stipulation, the defendants' attorney was called away
from his home in Portland to Seaside on account of what
is termed in the record "impending illness" in his family,
and was absent from his office. This absence and its
moving cause was unknown to the opposing counsel, but
on August 6, 1909, the latter addressed to defendants'
attorney this letter:

"Dear Sir and Friend: My Client, Mr. Higgins, was
in to see me yesterday and he insists on trying the case
in open court at Gold Beach. I hoped I could persuade
him to try it here, but his desire is that it be tried at
Gold Beach, and he gave me very good reasons for doing
so. I will therefore be at Gold Beach on the 23rd of this
month, which is the first day of the term, to take up this
case as soon as possible thereafter. Enclosed you will
find copy of reply which I have caused to be filed. Very
truly,                                  Robert G. Smith."

This letter was addressed to defendants' counsel at
Portland where he resides, but, on account of his absence
from home, it did not reach him until about August 14,
1909. On the 17th of that month he telegraphed
plaintiffs' counsel substantially that he had relied upon
the correspondence agreement to try the case at Grants
Pass in September, and that sickness and important

engagements would prevent his appearance at Gold Beach during the August term. This telegram reached plaintiffs' counsel while he was en route to attend court, and he immediately telegraphed in answer to it that he expected to try the case the following week. He proceeded to Curry County, and tried the case with the result already noted.

There is but one term of court held annually in Curry County, and that on the fourth Monday in August. The motion to open the decree, and the affidavits in support thereof were filed August 8, 1910, and there were no opposing affidavits. The defendants join in an affidavit setting forth in detail the correspondence between respective counsel, and that, being informed of the same, they themselves had abandoned the idea of going to Curry County to attend the trial, had made other arrangements, and gone off on their vacation out of reach of their attorneys, and hence were unprepared. They also set forth, not only in their own affidavits, but in the affidavits of some witnesses, very material matters which would be proper in evidence in their behalf on the issues raised by the pleadings. Section 103, L. O. L., says:

"The court may likewise, in its discretion and upon such terms as may be just, allow an answer or reply to be made or other act to be done after the time limited by this code or by an order enlarge such time and may also in its discretion and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect."

Here is a situation in which either attorney, as affected by his viewpoint, was authorized to act as he did. Counsel for plaintiffs might well have considered that the negotiations were yet open, awaiting the draft of a stipulation for a change of venue, as stated in the letter from defendants' counsel under date of August 2, 1909. It was

very natural for plaintiffs' attorney to suppose he had a right to withdraw from the arrangement if his client insisted upon such a course when the matter was brought to the attention of the latter. Plaintiffs' counsel acted with commendable good faith in at once addressing opposing counsel under date of August 6, 1909, notifying the latter that the case was to be tried at Gold Beach. Not receiving any reply to his withdrawal from the negotiations, plaintiffs' counsel would naturally think that the withdrawal had been accepted and that the case would take its usual course, but he had not reckoned on the "impending sickness" in the family of his brother attorney on the other side of the case. We cannot say that the latter is to blame for not informing the plaintiffs' counsel of that fact in advance. On the other hand, in view of the correspondence already noted, defendants' counsel, from his standpoint, would naturally suppose that the case would not be tried in Curry County, but that the venue would be changed to the more convenient county of Josephine. Here, then, is a difference between two honorable gentlemen, ornaments of the profession, in which each has acted in good faith and according to his client's interests as he honestly contemplated the situation. On the one hand, at the critical moment the plaintiff could not control his bellicose client, and, on the other, the defendant could not control the "impending sickness" in his family.

But this is not a case between the attorneys, neither of whom is really culpable in the matter. The just rights of the parties must be conserved. In such cases the law is more tender respecting the defendants because they are not the moving parties. Moreover, the inadvertence, surprise, or excusable neglect of the losing party, the defendants in this instance, are what the court must consider rather than what was apparently justifiable conduct on the part of the plaintiffs. We cannot balance one

against the other. We think the defendants have made a case requiring the decree to be set aside and the suit heard upon its actual merits on the issues involved. In thus seeking extraordinary relief from a court of equity, however, they should themselves do equity. They should at least put the plaintiffs in a position as favorable as they were in prior to the decree complained of. As the negotiations appeared to them, the plaintiffs and their counsel were authorized to act as they did and to call the case for hearing, especially considering the fact that there is but one term of court in that county, and that it would be a hardship to tie up valuable property rights, and be compelled to wait another year in order to bring the case to trial.

2. We think the defendants, as a condition for having the decree opened for rehearing of the case, should be compelled to pay the costs and disbursements incurred by the plaintiffs in the circuit court to the present time, and that, upon such payment to the clerk of this court within 30 days after the rendition of the decree here, the decree of that court will be reversed, and one here entered directing that the cause be remanded to the circuit court for a rehearing on the merits of the case, otherwise the decree of the circuit court will be affirmed. Neither party will recover costs or disbursements in this court.                    CONDITIONALLY REVERSED.